IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK A. WARES,

              Plaintiff,

                               CIVIL ACTION
     vs.                            No. 00-3393-SAC

CHARLES SIMMONS, et al.,


              Defendants.


ORDER

     This matter is before the court on remand from the United States Court of Appeals for the Tenth Circuit. <u>Wares v. Simmons</u>, 392 F.3d 1141 (10th Cir. 2004). This court must consider plaintiff's claim that the Department of Corrections unconstitutionally compromised his right to religious freedom by interfering with his access to essential religious texts. 392 F.3d at 1143. In this order, the court considers defendants' motion to dismiss (Doc. 81) and plaintiff's motion for the appointment of counsel (Doc. 82).

**Procedural background**

     Plaintiff was convicted of aggravated sexual battery and making a terroristic threat. While on parole, he committed acts that resulted in new convictions of kidnaping and aggravated

battery.[1]  Due to the nature of plaintiff's criminal history, the Kansas Department of Corrections directed him to enroll in the Sexual Abuse Treatment Program.   Plaintiff refused to partici-pate, and the Department of Corrections therefore placed him in level one of its Offender Privileges and Incentive system, a policy designed as a "comprehensive system of earnable offender privileges, which will provide an effective means of managing the offender population and reinforcing constructive behavioral changes in offenders."  (Internal Management Policy and Proce-dure 11-101, Doc. 75, Ex. 5, p. 1.)

Plaintiff contends that under this classification, he was "not permitted to order Jewish religious books, or Jewish religious study materials, nor ... permitted to receive these from any source.  All items sent to plaintiff was seized by the defendants, and destroyed, or donated to some source."  (Doc. 52, p. 4.)

Following the remand, this court ordered the issuance of service and directed the preparation of a report pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).

After the Martinez report was filed, the court directed plaintiff to demonstrate his use of the administrative grievance

-------

[1]Plaintiff currently is incarcerated in Colorado.

procedure concerning his claim that two religious texts, the Tehillim and the Tanya, were confiscated from him.  Plaintiff filed a response.

The defendants have filed a motion to dismiss (Doc. 81), alleging the plaintiff failed to fully exhaust the administrative remedy procedure.  Plaintiff has responded (Doc. 83).

## Discussion

**The motion to dismiss**

Pursuant to the Prison Litigation Reform Act of 1996 (PLRA), a state prisoner bringing an action under §1983 must demonstrate the exhaustion of available administrative remedies. The exhaustion requirement is codified in 42 U.S.C. § 1997e(a), which provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

"[T]he substantive meaning of § 1997e(a) is clear: resort to a prison grievance process must precede resort to a court." Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1207 (10th Cir. 2003)(internal quotations omitted).  To satisfy this requirement, a prisoner must complete the grievance procedure. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

Exhaustion may be excused if the prisoner can demonstrate that no administrative remedy is available or that resort to available remedies is futile.  <u>Steele</u>, 355 F.3d at 1209.  However, a plaintiff seeking this exemption must make a detailed showing and may not rest upon a generalized statement concerning his inability to pursue administrative remedies.  <u>Id</u>. at 1209-10.

Defendants' motion to dismiss asserts the plaintiff failed to exhaust available remedies by failing to complete Grievance 7237.  That grievance was filed on February 16, 1998, and states plaintiff had sought to send funds from his inmate account to the Aleph Institute to purchase the Tanya, a Jewish religious text.  The Unit Team rejected this request, stating: "Per IMPP 11-101 inmates on level I are not permitted to order religious material.  The main Jewish text is the 'Tora' which is allowed on Level One."  Plaintiff filed a similar grievance on March 6, 1998.

Both grievances were appealed to the Warden.  On March 27, 1998, the Warden denied relief and provided the following explanation:

> <u>FINDING OF FACT</u>: You sought to purchase a Jewish
> Religious Text.  You are on incentive Level I, and
> your counselor advised you that since you are on
> Incentive Level I, the Jewish Religious Text "Tanya"
> is not allowable property.  IMPP 11-101, Offender

4

> Privileges and Incentives, stipulates that those
> inmates on level I, may possess intake property per
> IMPP 12-120....   IMPP 12-120, Control of Inmate
> Personal Property, attachment A, lists Bible/primary
> religious text as the only religious text as allowable
> intake property.   IMPP 11-101, also stipulates that
> inmates on level I are limited as to their
> participation in organizations/formalized activities.
> That limitation includes allowable participation in
> activities including "...and religious services,
> formal services/functions mandated by the religion per
> IMPP 10-110."
>
> <u>CONCLUSIONS MADE</u>: The responses provided ... in the
> Unit Team response to this grievance are both accu-
> rate.   Intake property per the level I status you have
> limits your possession of religious materials/text to
> the primary religious text.  (Doc. 79, Ex. 34.)

The plaintiff did not appeal this decision to the Secretary

of Corrections.

On July 29, 1998, he filed grievance 7513 complaining the

prison mailroom seized two religious texts, the Tanya and

Tehillim, that had been purchased for him by his father.

Relief was denied by the Unit Team and the warden, and

plaintiff appealed to the Secretary.   The Secretary's response

states:

> FINDINGS OF FACT: In this grievance, the inmate
> objected to two books being withheld from him.   These
> were withheld as the inmate is on level 1 and unable
> to receive any property except that which is listed as
> intake property in IMPP 12-120.
>
> Since Level I inmates have access to the primary
> religious text and formal/services/functions mandated
> by their particular religion, they are able to prac-
> tice their religion in a manner which comports with

the First Amendment.  The inmate holds the key to having greater property privileges, including an expanded personal religious materials library, through his good behavior and productive participation in work/program assignments, demonstrated over a meaningful length of time as required by IMPP 11-101.

CONCLUSIONS MADE: The response of the warden is appropriate.  (Doc. 79, Ex. 35.)

On November 1, 1999, plaintiff filed grievance BA00008458 complaining that Jewish prisoners on level one status were denied the ability "to order, purchase, possess, or receive, Jewish religious books, mailings and study materials" while similarly-situated Christian prisoners were allowed to receive such materials.  (Doc. 79, Part 4, p.3.)  The Unit Team responded on November 17, 1999, as follows:

FINDING OF FACT: In your grievance you allege that Jewish inmates are being treated differently in regards to Level I issues.  You specifically mention a seizure dated 4/30/98 where two books, The Tanya and Metsudah Tahillim were withheld per IMPP 11-101.  You further allege that Jewish calendars were seized and destroyed.

CONCLUSIONS MADE: In checking with the mail personnel and the mail review committee I find that there is some validity to your claims.  On 4/30/98 there were the two books which were seized.  These books were withheld as per IMPP 11-101 which prohibits Level I inmates from receiving books and magazines.  KAR 44-12-601(l) states that books, periodicals, and magazines, must come directly from the vendor and be paid for by the inmate.  Any religious materials that are requested by the inmates must go through the Chaplain's office, and must have his approval before the order is placed.  If the religious material has not been approved by the Chaplain and the proper rules

and regulations regarding these items have not been
followed then these items will not be allowed to enter
the facility.   HCF has attempted to consistently
follow the guidelines set up overseeing Level I issues
without regard to favoring any specific religious
group.

This response was affirmed by the warden, and plaintiff

appealed to the Secretary.   The Secretary's designee gave the

following response:

FINDINGS OF FACT: Mr. Wares alleges that he has been
discriminated against on the basis of his religion.
He claims that religious reading materials have been
withheld from him, and that similarly situated
Christian inmates are treated by a different standard.
He claims that he is in need of these items to prac-
tice his religion.   Finally, he claims that articles
of his property have been confiscated and destroyed.

The response provided by the uni team explains that
IMPP 11-101 permits inmates who are on level 1 with
limited access to publications.   Attachment "A" of
that policy permits level 1 inmates to be in posses-
sion of "intake property per IMPP 12-120: tennis
shoes, hot pot, fan, alarm clock, and all consumable
post intake property (except books, magazines, and
newspapers) per IMPP 12-120."   The unit team response
further refers to KAR 44-12-601.   That regulation
provides that: "Except for material ordered through
special purchase orders, incoming bulk rate mail shall
not be delivered."   Finally, the unit team explains
that requests for religious material are routed
through the Chaplain's office for approval.

Issues pertaining to the inmate's request for the
"Tanya" and the "Tehillim" were addressed to the
inmate in a letter from Deputy Chief Legal Counsel
dated October 9, 1998.   The contents of that letter
are incorporated herein by reference and made part of
this response.

Inmate Wares offers no evidence that indicates that

7

the policy in question has been enforced in an uneven manner. His statement that "documented evidence will be brought forth, in the appropriate forum..." does not assist us in ascertaining if a policy has been improperly enforced. If he were to provide us with evidence, we would follow up and take necessary action.

We have contacted staff at the facility and have been advised that the provisions of IMPP 12-120 are currently being enforced in a consistent manner. (Doc. 79, Ex. 36.)

The October 9, 1998, letter referenced in this response contained a lengthy response to the plaintiff concerning his access to the Tanya and the Tehillim. The relevant passage states:

First, as to what I consider to be the major claim in your two pieces of correspondence, i.e., that the two above-referenced works are actually primary religious texts of the Jewish faith, our investigation of this claim reveals it to be invalid. According to the rabbi who serves as consultant to the KDOC on matters relating to accommodating the religious needs of Jewish inmates, the phrase "Metsudah Tehillim" refers to a book of Psalms published by the Metsudah Company. It is part of the Tanakh, to which you are already permitted access. Unless you are representing that you do not already possess the Tanakh, and now wish to possess this portion of it, the denial of your request was indeed legitimate and proper. There is nothing religiously significant about the Metsudah Company's version of the Psalms, according to the rabbi. As to the "Likutei Amarim 'Tanya,'" this is only a philosophical work, and is not properly characterized as part of the Torah, the Tanakh, Jewish prayer books, or the Code of Jewish Law, and hence, is not a primary religious test of the Jewish faith.

[...]

>Finally, I respectfully urge you to reconsider ... my suggestion concerning donation of the two texts at issue to the HCF inmate library as a means of furnishing you access to them in light of your Level I status.  The recommendations still stands ....
>(Doc. 79, Ex. 37.)

Defendants' motion for dismissal is based upon plaintiff's failure to complete the remedy procedure in Grievance 7237, which first addressed his inability to purchase the Tanya while in level 1 status.

The record shows the plaintiff did not complete the remedy procedure for that grievance by appealing the denial of relief to the Secretary of Corrections.  However, the claim concerning the ability to purchase Jewish religious materials was raised, and exhausted, in Grievance BA00008458.  Because the plaintiff remained in level I status and subject to the restriction on religious materials at all relevant times, it appears the latter grievance was timely and effective to preserve his claim. Moreover, a review of the grievances and responses in the record persuades the court that plaintiff fully exhausted his claims concerning access to religious materials.

Accordingly, the court concludes the plaintiff satisfied 42 U.S.C. § 1997e(a) and that prison officials were afforded the opportunity to consider the claims presented in the amended

complaint.

Therefore, the motion to dismiss will be denied and defendants will be allowed additional time to respond to the complaint.

**The motion for the appointment of counsel**

The plaintiff has moved for the appointment of counsel. A party in a civil action has no constitutional right to the assistance of counsel. <u>Bethea v. Crouse</u>, 417 F.2d 504, 505 (10th Cir. 1969). Instead, the decision whether to appoint counsel in a civil matter lies in the discretion of the district court. <u>Williams v. Meese</u>, 926 F.2d 994, 996 (10th Cir. 1991). The court should consider "the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." <u>Long v. Shillinger</u>, 927 F.2d 525, 526-27 (10th Cir. 1991).

The court has considered the record and finds the pleadings prepared by the plaintiff contain a detailed explanation of the factual basis for his claims, legal theories, and citations to authority. The court finds plaintiff is capable of presenting his claims and concludes there is no basis to appoint counsel at this time. The motion is denied.

IT IS, THEREFORE, BY THE COURT ORDERED defendants' motion

10

to dismiss (Doc. 81) is denied.

IT IS FURTHER ORDERED defendants are granted (90) days from the date of this order to file a dispositive motion or other responsive pleading.

IT IS FURTHER ORDERED plaintiff's motion for the appointment of counsel (Doc. 82) is denied.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED.**

Dated at Topeka, Kansas, this 25th day of August, 2006.


S/ Sam A. Crow
SAM A. CROW
United States Senior District Judge