IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MARK A. WARES,

          Plaintiff,

v.                        Case No. 00-3393-SAC

CHARLES SIMMONS and
STEVEN  DECHANT,

          Defendants.


MEMORANDUM AND ORDER

Plaintiff is a prisoner who has brought suit pursuant to 42 U.S.C. §1983, claiming violations of the Fifth Amendment and the free exercise clause of the First Amendment arising from defendant's prohibition on plaintiff's possession of certain religious texts. This case comes before the court on defendants' motion for summary judgment.  Plaintiff opposes the motion.

**Summary Judgment Standards**

On summary judgment, the initial burden is with the movant to point out the portions of the record which show that the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca-Cola Bottling Co.*,

968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied*, 506 U.S. 1013 (1992).  If this burden is met, the non-movant must set forth specific facts which would be admissible as evidence from which a rational fact finder could find in the non-movant's favor. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The non-movant must show more than some "metaphysical doubt" based on "evidence" and not "speculation, conjecture or surmise." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bones v. Honeywell Intern.,* 366 F.3d 869, 875 (10th Cir. 2004). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).

A pro se litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (1991).  However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  The court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues."  *Drake v. City of Fort*

2

*Collins*, 927 F.2d 1156, 1159 (10th Cir.1991).

**Facts**

The relevant facts are uncontested.[1] All reasonable inferences are drawn in plaintiff''s favor.  Plaintiff is serving a sentence of twenty to forty-five years for convictions of aggravated sexual battery, making a terroristic threat, kidnaping, and aggravated battery.  At all times relevant to this case, plaintiff was lawfully incarcerated at the Hutchinson Correctional Facility, Hutchinson, Kansas. Defendant Steve Dechant was employed as Deputy Warden of the Facility, and defendant Charles Simmons was employed as the Kansas Secretary of Corrections at the time.  Due to the nature of plaintiff's convictions, the Kansas Department of Corrections ("KDOC") requested that he participate in the sexual abuse treatment program (SATP).  Because plaintiff refused to do so, the Department of Corrections reduced plaintiff's privilege to Level I of its earnable-privilege system from a Level at which plaintiff had enjoyed more benefits.

Level I inmates are subject to multiple restrictions, including

---

[1]In determining this motion, the court relies on the *Martinez* report in addition to the summary judgment pleadings. *See Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir.1978). Plaintiff has presented no evidence conflicting with the *Martinez* report, which merely provides specific details consistent with the general facts agreed to by both parties.

limits on the property they are permitted to possess.  Inmates returned to security Level I are allowed to possess their primary religious text(s) but are not allowed to possess other religious texts.  *See* Dk. 75, Exh. 5, p. 7, para. F.  Primary religious texts are listed in an internal policy (IMPP) which specifies the texts the KDOC considers to be primary, or essential, to each specified religion. *See* Dk. 75, Exh. 4, Att. D.  For the Jewish faith, the KDOC policy lists the following four documents or categories of documents as primary texts: "Torah, Tanakh, Prayer books, Code of Jewish Law."  *Id.* The KDOC considers all other texts, books or documents as non-essential to the Jewish religion.

Under IMPP 11-101, earnable privileges are grouped into four levels: "Intake Level, Level I, Level II, and Level III."  *Id.*, p.  2. One of the earnable privileges is "property."  *Id.* " To complete Level I, an inmate must...demonstrate a willingness to participate in recommended programs and/or work assignments for 120 consecutive days."  *Id.*, p. 4.  "An inmate shall be automatically reduced to Level I for ... documented refusal to participate in ... recommended programs..." *Id.*, p. 5. "If an inmate's incentive level is reduced as a result of refusing a work or program assignment, he or she is not eligible for an incentive level increase until they

4

have demonstrated appropriate behavior for 120 days, including placement to, and satisfactory participation in, the appropriate work assignment/program previously refused." *Id.*, p. 6.

IMPP 11-101 further states, with exceptions not relevant to this case, "property items not authorized at the incentive level to which the inmate is reduced shall be removed from the facility in accordance with the provisions of IMPP 12-120." *Id.*, p. 7, E :  "Upon an offender's return to Level I, property items allowed under the provisions of IMPP 12-120 shall be removed from the facility in accordance with established policy." " *Id.*, p. 7, F. Attachment A to IMPP 11-101 specifies Level I property as: "Intake property per IMPP 12-120; tennis shoes; hot pot, fan, alarm clock, and all consumable post-intake property (except books, magazines, and newspapers) per IMPP 12-120."[2]  Intake property allowable per IMPP 12-120 is "only that personal property specified in Admission Property List (Attachment H)" Dk. 75, Exh. 6, p. 3.  Attachment H specifies that "the following may be retained by offenders" as intake property:  "Bible/Primary Religious Text," quantity, 1, as "approved by reception facility chaplain."  Dk.

_____

[2]IMPP 12-120 additionally permits inmates to possess religious items and materials not at issue in this case, such as religious beads, prayer rugs, or head garments, under certain conditions.  *See* Dk. 75, Exh. 6, Att. B, p. 7.

75, Exh. 6, Attachment H. Pursuant to these policies, after plainitiff's reduction to Level I, the only religious books he was allowed to possess were the primary religious texts.

After plaintiff's security level was reduced to Level I, plaintiff was prevented from possessing two religious texts which plaintiff desired, the "Tanya" and the "Tehillim", because defendants deemed them to be non-essential to the practice of plaintiff's religion and thus not permitted on plaintiff's security level.  Plaintiff contends[3] that he practices a specific branch of Judaism called "Chassidism," which requires daily reading/study of the following:

> Chumash (5 books of Moses with commentary); Tehillim (daily readings of Psalms according to the days of the Jewish month as practiced by Chabad); Tanya (Chabad teachings of Rabbi Schneur Zalman); Hayom Yom (by the Lubavicter Rebbe); [and] the Siddur Tehillat HaShem (Prayer book arranged by  Rabbi Schneur Zalman).

Dk. 100, p. 6.

Plaintiff thereafter filed grievances related to the seizure of the "Tanya" and the "Tehillim," which were reviewed by the Warden of the Hutchinson Correctional Facility.  The Warden found that the texts were not

---

[3]The court has liberally construed various assertions included in plaintiff's response to be supplemental statements of fact.  *See* Dk. 100, pp 5-8, captioned "Plaintiff's response."  To the extent they are not supported by necessary citation to the record, they have been disregarded.

6

primary and upheld the decision of the administrative staff.  Plaintiff

continued to pursue his grievance, which was ultimately reviewed by the

Deputy Chief Legal Counsel for the Kansas Department of Corrections.

During that appeal, the KDOC[4] asked a rabbi to act as a consultant and

review the two texts which plaintiff desired.  The rabbi did so and confirmed

that the "Tanya" and the "Tehillim" were  non-essential to the Jewish faith.

Accordingly, the Deputy Chief Legal Counsel upheld the prohibition on

plaintiff's possession of the "Tanya" and the "Tehillim," but offered plaintiff

several alternatives which would have allowed him some access to those

books, including donation of the texts to the prison library.  Plaintiff refused

these alternatives.

Plaintiff then filed this suit in United States District Court

pursuant to 42 U.S.C. §1983, noting a First Amendment claim but primarily

contending that defendants violated his Fifth Amendment right against

self-incrimination by attempting to force him to enter the SATP.  Judge Van

Bebber granted defendants' motion to dismiss, finding plaintiff's Fifth

---

[4]*See* Dk. 75, IMPP 10-110, Exh. 4, p. 12 of 12,§ E1, stating that the warden's designee may "contact clergy or other representatives or practitioners of the religion...or conduct any other investigation necessary to determine whether the practice is truly compelled by or essential to the religion" when considering a request for accommodation.

Amendment claims moot in light of *McKune v. Lile*, 536 U.S. 24 (2002)[5] and

holding that plaintiff's First Amendment claims concerning access to Jewish

religious materials failed to state a claim for relief. Dk. 54.  Plaintiff appealed

that decision to the Tenth Circuit. On appeal, the Tenth Circuit noted

plaintiff's failure to raise his Fifth Amendment claim on appeal, and reversed

and remanded the First Amendment claims for further development of the

record. *Wares v. Simmons*, 392 F.3d 1141 (10th Cir. 2004).

After remand by the Tenth Circuit, plaintiff filed an amended

complaint containing a Fifth Amendment claim, and a First Amendment

claim that defendants violated his freedom to exercise his religious beliefs.

(Doc. 52.)  Plaintiff sues both defendants in their official and individual

capacities.  Plaintiff seeks damages, replacement of the items seized by

defendants, purging of his record, a permanent injunction "from making any

modifications from what was ordered by the sentencing court," legal fees,

---

[5]*McKune* held that the Fifth Amendment does not bar the Kansas  Department of
Corrections from imposing restrictions on inmates who refuse to enroll in SATP,
because the choice between losing prison privileges and accepting responsibility for
past crimes is a choice that does not amount to compulsion, stating: "The Kansas SATP
represents a sensible approach to reducing the serious danger that repeat sex
offenders pose to many innocent persons, most often children. The State's interest in
rehabilitation is undeniable. There is, furthermore, no indication that the SATP is merely
an elaborate ruse to skirt the protections of the privilege against compelled
self-incrimination. Rather, the program allows prison administrators to provide to those
who need treatment the incentive to seek it." 536 U.S. at 48.

and any other relief the court deems just.

**Official Capacity Claims**

Plaintiff has brought suit against Charles Simmons and Steven Dechant in their official capacities, as well as in their individual capacities. This official capacity claim "must fail, because state officials acting in their official capacities are not "persons" subject to liability under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)." *Neal v. Lewis,* 414 F.3d 1244, 1248 (10th Cir. 2005). Accordingly, summary judgment is warranted in favor of defendants on plaintiff's official capacity claims.

**Individual Capacity Claims**

**Qualified immunity**

Defendants assert that they are qualifiedly immune from this suit.  A public employee is entitled to qualified immunity "in all but the most exceptional cases...." *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 516 (10th Cir.1998). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Under Tenth Circuit law, "a plaintiff seeking to avoid summary judgment on qualified immunity grounds must satisfy a heavy

9

two-part burden by showing: 1) the defendant violated a constitutional or statutory right, and 2) the right was clearly established at the time of the defendant's unlawful conduct." *Mecham v. Frazier*, __ F.3d __,  (10th Cir. Sept. 11, 2007) (internal citation omitted).

**Prison regulations or policies- general law**

The Tenth Circuit has recently reaffirmed that prison regulations are distinguishable from other laws alleged to violate fundamental constitutional rights, and must be judged under a less restrictive reasonableness test.

> ...we are mindful of the delicate balance that has been recognized between prisoners' constitutional guarantees and the legitimate concerns of prison administrators. In *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987), the Supreme Court acknowledged that although "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," *id.* at 348, 107 S. Ct. 2400 (quotation omitted), convicted prisoners nonetheless "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion," *id.* (citation omitted).  The Court emphasized, however, that in evaluating a challenged prison regulation, appropriate deference must be afforded to prison administrators "who are actually charged with and trained in the running of the particular institution under examination." 107 S. Ct. 2400 (quotation omitted). Accordingly, the Court distinguished prison regulations from other laws alleged to violate fundamental constitutional rights, holding that the former must be judged under a less restrictive reasonableness test:  " '[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.' " *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct.

2254, 96 L. Ed. 2d 64 (1987)).

*Boles v. Neet,* 486 F.3d 1177, 1180 -1181 (10th Cir. 2007).  *See Kay v.*

*Bemis*, __ F.3d __, 2007 WL 2694053 (10th Cir. Sept. 11, 2007).

In order to allege a constitutional violation based on a free

exercise claim, a prisoner-plaintiff must survive a two-step inquiry.  First, the

prisoner-plaintiff must show that a prison regulation "substantially burdened"

his sincerely-held religious beliefs. *Boles*, 486 F.3d at 1182. If that showing

is made, prison officials may identify the legitimate penological interests that

justify the impinging conduct. Thereafter, the burden returns to the prisoner

to "show that these articulated concerns were irrational."  *Kay*, __ F.3d __ ,

at *3, n.2, quoting *Salahuddin v. Goord*, 467 F.3d 263 , 275 (2d Cir. 2006).

This framework, established in *Turner* and *O'Lone*, seeks to balance

prisoners' constitutional rights against the valid concerns of prison

administrators.[6]

**Analysis/application**

_____

[6]Although the Tenth Circuit has declined to decide whether the *Turner/O'Lone*
standard continues to govern prisoner free exercise cases after *Employment Division,
Department of Human Resources v. Smith*, 494 U.S. 872, 879 (1990), it has consistently
applied the *Turner/O'Lone* balancing framework to prisoner's First Amendment claims,
post-Smith.  *See e.g., Boles v. Neet*, 86 F.3d 1177, 1181 (10th Cir. 2007) ; *Wares v.
Simmons*,  392 F.3d 1141 (10th Cir. 2004); *Beerheide v. Suthers*, 286 F.3d 1179 at
1184-86 (10th Cir. 2002); *Kikumura v. Hurley*, 242 F.3d 950 (10th Cir.2001). This court
does the same.

### Substantial burden

Accordingly, the court first asks whether Plaintiff has presented facts showing the violation of a constitutional right.  At this point, the sincerity of Plaintiff's belief is not questioned.  Nor is it disputed that Plaintiff's belief is religious in nature. Plaintiff has thus shown that a prison regulation has impacted his sincerely-held religious beliefs.[7]  The remaining threshold showing that Plaintiff must make is that his religious beliefs are "substantially burdened" by the prison regulation which prevents his possession of the two desired books. *Boles*, 486 F.3d at 1182; *Kay,* __ *F.3d* __ *at \*3.*            Despite its articulation of the "substantial burden" test, the Tenth Circuit has rarely defined or described that term in the context of

_____

[7]Plaintiff has additionally offered his own assertion that the two religious texts he desires are necessary to the practice of his religion. In the Tenth Circuit, "religious sincerity – not necessity – is the key component to satisfying the first step of a prisoner's free exercise claim." *Kay*, at \*4.  Thus, it is not necessary for First Amendment protection that the tenet or belief be central to or mandated by the Plaintiff's religious doctrine, and it is sufficient for this preliminary showing that a prisoner's religious belief is sincerely held. *See LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir.1991). Nonetheless, the centrality inquiry may be relevant to the substantiality of the burden.Plaintiff has additionally offered his own assertion that the two religious texts he desires are necessary to the practice of his religion. In the Tenth Circuit, "religious sincerity – not necessity – is the key component to satisfying the first step of a prisoner's free exercise claim." *Kay*, at \*4.  Thus, it is not necessary for First Amendment protection that the tenet or belief be central to or mandated by the Plaintiff's religious doctrine, and it is sufficient for this preliminary showing that a prisoner's religious belief is sincerely held. *See LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir.1991). Nonetheless, the centrality inquiry may be relevant to the substantiality of the burden.

an inmate's pure First Amendment free exercise claim.[8]  In *Vasquez v. Ley*, 1995 WL 694149, *2 (10th Cir.1995), however, the Tenth Circuit did so, defining a "substantial burden" as one that:  (1) significantly inhibits or constrains plaintiff's religious conduct or expression, (2) meaningfully curtails plaintiff's ability to express adherence to his faith, or (3) denies plaintiff reasonable opportunity to engage in fundamental religious activities., citing *Werner v. McCotter*, 49 F.3d 1476, 1480 & n. 2 (10th Cir.), *cert. denied*, 115 S. Ct. 2625 (1995).[9]  There, as here, the case arose out of a prison disciplinary proceeding resulting from an inmate's possession of unauthorized property. The Tenth Circuit found that the prison's seizure of two of three unauthorized rosaries in the inmate's possession did not constitute a "substantial burden" on the inmate's religion, but noted that a blanket prohibition on possession of prayer beads would have done so.

Similarly, in *Neusteter v. Cossobone*, 62 Fed. Appx. 844, 2003

---

[8]By this, the court means a free exercise claim brought solely pursuant to 42 U.S.C. § 1983 and not pursuant to the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb et seq., or to the Religious Land Use and Institutionalized Persons Act of 2000,(RLUIPA), 42 U.S.C. § 2000cc, both of which require a strict level of scrutiny and thus afford inmates more protection against religious infringement by correctional facilities' regulations than the rational basis analysis under the First Amendment.  *See O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 992 (10th Cir. 2004); *Kikumura v. Hurley,* 242 F.3d 950, 962 (10th Cir.2001).

[9]In so doing, the Tenth Circuit adopted the definition of "substantial burden" used in RFRA prisoner cases.  *See Grace United Methodist Church v. City Of Cheyenne,* 451 F.3d 643, 661 (10th Cir. 2006)*;Werner v. McCotter,* 49 F.3d 1476 (10th Cir.1995).

WL 713844 (10th Cir. 2003), the Tenth Circuit examined a prison disciplinary action which subjected the inmate to restricted privileges, including a limit of only two books in his cell.  The Court found no "substantial burden" on the free exercise of the inmate's religion by denying him access to a particular religious book he desired.

In *Boles*, the Tenth Circuit recently examined a § 1983 case not involving a disciplinary action.  In that case, a Jewish inmate alleged a violation of his free exercise rights by the prison's prohibition on his wearing certain religious garments while he was being transported outside the facility for medical treatment. The Tenth Circuit found a "substantial burden" on religion based on the inmate's assertions that the head covering which the prison regulation prohibited was required for all Jewish males by the code of Jewish Law, that "observant Jews may not walk even as much as four cubits without wearing [the Tallit Katan]," that the observance of these commandments is of "cosmic or life and death importance,"  and that his wearing it did not interfere with prison security. *Boles*, 486 F.3d at 1182. The case was then remanded for further proceedings, without analysis of the remaining *Turner/O'Lone* factors.

Here, preventing plaintiff from possessing the "Tanya" and/or

the "Tehillim" has not been shown to have substantially burdened plaintiff's exercise of his religion.  Plaintiff has not shown that his exercise of religion has been circumscribed or violated by virtue of the fact that he lacks possession of the Psalm book (which he has in another form) or of the book of teachings by a particular rabbi.  By virtue of the other religious materials and items that plaintiff is permitted to possess and ceremonies that he is permitted to engage in at Level I, his religious conduct or expression is not significantly inhibited or constrained, he remains able to express adherence to his faith, and he has a reasonable opportunity to exercise his sincerely-held religious beliefs.[10]

### Legitimate penological interest

### Rational relationship

Assuming *arguendo*, that plaintiff has shown a substantial burden, the court considers whether defendants have met their "relatively limited burden of identifying the legitimate penological interests that justif[ied] the impinging conduct." *Boles*, 486 F.3d at 1183, citing *Salahuddin*, 467 F.3d at 274-75.  To satisfy this factor, "the prison

---

[10]See Dk. 75, Exh. 4: "Inmates of all incentive levels may attend religious activities other than those where the primary intent is social in nature." "Inmates shall generally be allowed to posses a bible or other primary text of their religion that shall be provided to them..."

administration is required to make a minimal showing that a rational relationship exists between its policy and stated goals." *Beerheide v. Suthers*, 286 F.3d 1179, 1186 (10th Cir.2002); *Boles*, 486 F.3d at 1181. Such interests must be proved by the record in the particular case, rather than solely by citation to similar cases in which penological interests were found to be sufficient. *See Boles*, 486 F.3d at 1182-83. The court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The court considers four factors in determining whether a prison regulation reasonably curtails constitutional rights:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Boles*, 486 F.3d at 1181, quoting *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir.2002) (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

## Rational connection

Defendants contend that the relevant policies serve their

legitimate penological interests in good order, security and safety.

Defendant Charles Simmons has submitted an admissible affidavit stating

that the purpose of the policy regarding inmate property, IMPP 12-120, is to

maintain "the good order and security of the correctional facilities."  Dk.

120, Exh. 1, p. 1.  He explains:

> An inmate in possession of secondary religious texts, who is a
> higher custody classification or who has restrictions on what property
> he may possess as a result of a disciplinary conviction, does create
> an undue burden on security staff.  The cells of such inmates are
> subject to searches which are made to be more cumbersome and
> time consuming when additional books beyond the number
> authorized are contained within the cell.  Such additional books
> provide more hiding places for contraband and a greater fire and
> safety risk.
> When an inmate's cell requires a longer time to search, that
> draws more of limited staff resources to that task and results in a
> lessening of time available to perform security and other tasks
> elsewhere.
> IMPP 12-120 was originally put in place in 1985 to provide rules
> about how to manage inmate property and has continued to evolve to
> better provide for the acquisition, care and control of the variously
> described inmate property.

Dk. 102, Exh. 1.

Similar interests are also stated in the relevant policies

themselves. The purpose for the KDOC's comprehensive system of

earnable offender privileges set forth in IMPP 11-101 is to "provide an

17

effective means of managing the offender population and reinforcing constructive behavioral changes in offenders."  Dk. 75, Exh. 5, p. 1.  *See Maberry v. McKune*, 24 F. Supp. 2d 1222, 1226 (D. Kan.1998).

IMPP 12-120 is the controlling policy regarding control of inmate personal property. "Consistent with considerations for institutional order, safety, and security," the policy establishes "the type and amount of property inmates may possess as determined by each inmate's privileges and incentives and custody level, Dk. 75, Exh. 6.  "Its purpose is to prevent violence and to maintain order and security." *Maberry*, 24 F. Supp. 2d at 1226.

Similar penological interests are expressed in the KDOC's policy on religious programs, IMPP 10-110.  *See* Dk. 75, Exh. 4 ("Inmates shall be permitted to practice a recognized religion to which they sincerely ascribe ... Facilities shall...provide adequate space and equipment for the administration of religious programs, consistent with security and custody considerations, operational needs, rehabilitation goals, and the missions of the Department."  "Inmates shall not be permitted to posses any religious items that are not listed below, or included among the items of personal property referenced in Attachment D and specifically allowed by IMPP 12-

120, unless the prohibition imposed by the policy against possession of the

particular religious item is not founded on legitimate concerns for order,

rehabilitation goals, the mission of the Department, or security. The

prohibition must be consistent with the principle of accommodating

religious requirements while meeting legitimate security concerns.") *Id.*, p.

5.  When accommodations to religious practices are requested, the

determination includes "whether the manner in which the inmate seeks to

practice the religion or exercise the beliefs will disrupt departmental and

facility practices, policies, or operations that are founded on concerns for

security, safety, rehabilitation, or sound correctional management."  IMPP

10-110, p. 10.  "The nature of a particular facility... the custody level(s) and

security classification status of the inmates housed there, and the

correctional goals sought to be met there may be taken into consideration

in determining whether to allow a particular religious practice at the facility."

*Id.*

From the testimony of defendant Simmons, as supported by the

recitations in the policies themselves, the court finds a rational connection

between the prison policy regulations at issue and the legitimate

governmental interests advanced as their justification.  Accordingly, the

court considers the remaining *Turner* factors.

## Alternative means of exercising the right

The court next asks whether an alternative means of achieving plaintiff's right to freely exercise his religion is available notwithstanding the relevant policies. The Tenth Circuit has held that an alternative means exists so long as some means, albeit not plaintiff's preferred means, of religious exercise is available. *See Clifton v. Craig*, 924 F.2d 182, 183-84 (10th Cir. 1991).  In addition, the mere diminishment, as opposed to complete denial, of the plaintiff's spiritual experience is relevant in determining whether the proffered penological interests suffice to justify the infringement. *Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1213 (10th Cir.1999). Defendants are not required to "set up and then shoot down every conceivable alternative method of accommodating the [plaintiffs'] constitutional complaint."  *Woods v. O'Leary*, 890 F.2d 883, 887 (7th Cir.1989) (citing *Turner*, 482 U.S. at 90-91, 107 S. Ct. at 2262). *Cf Searcy v. Simmons*, 299 F.3d 1220, 1228 -1229 (10th Cir. 2002) (finding inmate's suggestion that the "KDOC has an alternative means of accommodating his free exercise rights--not requiring an admission of responsibility--would eviscerate the SATP's legitimate rehabilitative process of accepting

20

responsibility for past behavior.  As such, it is not an alternative at all.")

The record shows that defendants offered to plaintiff at least one alternative which would have preserved plaintiff's access to the "Tanya" and "Tehillim." As defendant Simmons states:

> Subject to the specifics of a given inmate's custody level, privilege level and housing location, that inmate should be able to access secondary religious texts through the facility library if such texts are in the library.  Further, an inmate can always donate texts to the library if he is beyond his limitation on possession in his cell of books he owns, and continue to have access to them in that fashion.

Dk. 102, Exh. 1.

Plaintiff was specifically offered, on more than one occasion, the choice of donating the desired books to the library as a means of furnishing plaintiff access to them while he was on Level I status. Dk. 79, p. 7 and Exh. 37. Plaintiff refused this alternative. *Id.* Accordingly, plaintiff had alternative means of achieving plaintiff's right to freely exercise his religion, despite the governing policies.

### Ripple effect

The court next examines the record to see whether a negative ripple effect would flow from plaintiff's possession of the desired books. "Courts must be particularly deferential to the discretion of corrections officials when the accommodation of an asserted right will have a

21

significant ripple effect on fellow inmates or on prison staff." *Hammons v. Saffle*, 348 F.3d 1250, 1257 (10th Cir. 2003).

Defendant Simmons' testimony above shows that the more books in a cell, the more cumbersome and time consuming it is to search that cell. Because additional books provide more hiding places for contraband, it takes staff longer to search the cell, requiring more of limited staff resources for that task and leaving less staff and less time to perform security and other tasks elsewhere. Dk. 102, Exh. 1. The court agrees that to permit books beyond the numbers permitted by the policy would create an undue burden on security staff.

Additionally, allowing plaintiff to define the consequences flowing from his refusal to participate in SATP could detract from prison officials' ability to provide uniform and effective rehabilitative treatment for plaintiff and other sex offenders. "To excuse plaintiff and other inmates from the SATP's requirements could effectively remove any rehabilitative content from the treatment program, rendering it meaningless." *Searcy v. Simmons,* 68 F. Supp. 2d 1197, 1203 (D. Kan.1999).  Further, to allow plaintiff to avoid the Level I property restriction, while imposing that restriction on other non-participants, could cause resentment and

discontent, frustrating prison officials' goal of rehabilitation and treatment of convicted sex offenders.  See id.

## Easy alternatives

Lastly, plaintiff has not suggested any "obvious, easy alternatives" to the property restrictions imposed at Level I that would accomplish the goals of the current policy at *de minimus* cost to KDOC.

Given the above factors, this court holds that the challenged policy is rationally related to a legitimate penological interest. Defendants have shown that their penological interests justify the infringing conduct.

### Irrational concerns

The burden thus shifts to plaintiff to show that defendants' articulated concerns were irrational.  In plaintiff's reply brief,[11] plaintiff attempts to meet this burden.  First, plaintiff asserts that defendants' asserted justifications have shifted over time. Plaintiff accurately notes that defendants initially and erroneously denied that plaintiff had properly grieved his First Amendment claim. This error was timely corrected by defendants on the record, however.  Secondly, plaintiff contends that defendants consistently

---

[11]This brief will be considered, despite the fact it was untimely filed, because plaintiff asserts therein that he habitually receives his mail late, that he received defendant's supplement six days after it was postmarked, and reflects that his own brief was submitted for mailing six days before the court received it.

justified their book removal as a result of plaintiff's "refusal to participate in programs," but now alleges the books are a "security risk." Dk. 103, p. 2. Again, plaintiff is correct, but both interests are relevant, timely, and valid. Thirdly, plaintiff correctly asserts that defendant Simmons relies upon a version of IMPP 12-120 which was in effect after plaintiff left KDOC in 2001. This point is immaterial because the version of that policy in effect during plaintiff's incarceration at KDOC is the same as the subsequent policy, in all relevant respects. Compare Dk. 102, Exh. 2 (IMPP 12-120 amended 2007) with Dk. 75, Exh. 6 (IMPP 12-120 amended 2000). Lastly, plaintiff asserts that the security risk defense is pretextual, noting that even when he was in segregation, which is the highest security level, he "was permitted practically all [his] property." *Id*. This assertion is not sufficiently specific to be persuasive because it fails to show that plaintiff was permitted to retain any books other than his primary religious text, while in segregation. Plaintiff has thus not shown that defendants' articulated concerns were irrational. The court finds that no constitutional violation based on a free exercise claim has been shown.

**Clearly established**

Alternatively, the court finds that the unconstitutionality of the

challenged prison policies was not clearly established at the relevant time.

> To assess whether the right was clearly established, we must ask if "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Medina*, 252 F.3d at 1128. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir.2007) (citations and quotations omitted). To survive a motion for summary judgment, the plaintiff must show the right was clearly established in a particularized sense.... This court has held that for a right to be particularized, there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or clearly established weight of authority from other courts.

*Mecham v. Frazier*, __ F.3d __ 2007 WL 2608624, *4 (10th Cir. 2007), quoting *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir.1995) (citations and quotations omitted). "While the facts of the cases compared need not be identical, *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004), they must be sufficiently analogous to satisfy the particularized context necessary to support liability." *Id.*

Plaintiff shows the court no analogous Supreme Court or Tenth Circuit decision supporting his view, or clearly established weight of authority from other courts, and the court's own research has revealed none. Instead, prior challenges to the same policies have consistently failed on claims that they violate an inmate's First Amendment right to free

25

exercise of religion. *See e.g. Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005)(finding no violation of First Amendment rights by IMPP 12-120, where defendant had "a reasonable opportunity to pursue his religion in light of the prison's legitimate administrative and penological objectives, including fire safety, institutional security, control of the source and flow of property within the prison, and the effective establishment of a behavior-incentive program."); *Maberry v. McKune,* 24 F. Supp. 2d 1222, 1226 (D. Kan.1998) (finding IMPP 11-101 and 12-120 did not violate the First Amendment and the limit on the number of religious books a prisoner could possess was necessary to achieve the prison administration's goals of minimizing violence and securing safety within prison walls.) Accordingly, the court finds that the unconstitutionality of the challenged prison policies was not clearly established at the relevant time.

The court additionally finds that defendants' conduct was objectively reasonable.  An officer's "reliance on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question" may absolve the officer from knowing that his conduct was unlawful.  *Kay v. Bemis,* ___ F.3d __ , n. 6, 2007 WL 2694053 (10th  Cir. September 11, 2007), citing *Roska v. Peterson*, 328 F.3d 1230, 1251-52 (10th Cir. 2003).

*See Lawrence v. Reed*, 406 F.3d 1224, 1232 (10th Cir .2005).

> In considering the "objective legal reasonableness" of the state officer's actions, one relevant factor is whether the defendant relied on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question. (Footnote and citations omitted). Of course, an officer's reliance on an authorizing statute does not render the conduct per se reasonable. (Footnote and citation omitted). Rather, "the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional." *Grossman*, 33 F.3d at 1209.

*Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 -1252 (10th Cir. 2003).

Here, it is uncontested that defendants removed the desired religious books as a disciplinary measure in reliance upon and in accordance with the requirements of the property restrictions found in the relevant policies, which were official policies of the KDOC. These policies are not obviously unconstitutional, and no reason has been shown why defendants should have believed they were acting unconstitutionally in removing the books.

This is particularly so since during the course of plaintiff's grievance about defendants' seizure of the books, defendants consulted with and relied upon the opinion of one considered to be an expert in the matter -- a Jewish rabbi. When asked about the specific application of their policies to the religious books desired by plaintiff, the rabbi unequivocally confirmed

that neither the "Tanya" nor the "Tehillim" was essential for the practice of plaintiff's faith.  Although plaintiff now implies that the rabbi may have lacked knowledge about the details of plaintiff's particular branch of Judaism, defendants' reliance upon the rabbi's opinion was nonetheless objectively reasonable.  Defendants had no reason to believe that the rabbi was uninformed or that their policy, which at all times preserved the inmate's right to possess the primary texts of his religion and to practice his religion, was unconstitutional.  Accordingly, defendants are entitled to qualified immunity.

**No personal participation**

Defendants additionally claim that they should be dismissed because Plaintiff has failed to show their personal participation in the acts in question. The court agrees.

> It is axiomatic that, to prevail on a damages claim for a constitutional violation pursuant to § 1983, the plaintiff must show that the defendant, acting under color of state law, "personally participated in the alleged violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir.1996).  Conclusory allegations are not sufficient to state a constitutional violation. *Id.*

*Robertson v. Las Animas County Sheriff's Dept.*, *6, __ F.3d __, 2007 WL 2588252 (10th Cir. 2007).  Because plaintiff has failed to show what role, if any, the individual defendants had in the allegedly illegal acts, summary

28

judgment is warranted on plaintiff's damage claim as well.

**Fifth Amendment claim**

Judge Van Bebber previously dismissed plaintiff's Fifth

Amendment claim that imposing punitive restrictions in response to

plaintiff's refusal to participate in SATP violated his Fifth Amendment right

against self-incrimination.  Plaintiff did not appeal that ruling, and would not

have been successful had he done so.  *See McKune* and cases cited in

*Carroll v. Simmons,* 89 Fed. Appx. 658, *662, 2004 WL 206329, *3 (10th

Cir. 2004).  The court finds no error in the dismissal, and no reason to

depart from the previous ruling.  Accordingly, to the extent that plaintiff may

continue to allege a violation of his Fifth Amendment privilege against

self-incrimination, that claim is barred by the law of the case doctrine.  See

Been v. O.K. Industries, Inc., __ F.3d __, 2007 WL 2181511, *3 (10th Cir.

2007) ("law of the case" doctrine dictates that prior judicial decisions on

rules of law govern the same issues in subsequent phases of the same

case, listing exceptions); *Copart, Inc. v. Administrative Review Bd., U.S.*

*Dept. of Labor*,  __ F.3d __, 2007 WL 2181521, *3 (10th Cir. 2007)

(explaining that "[t]he doctrine [of law of the case] applies to issues

previously decided either explicitly or by necessary implication."), quoting

29

*Guidry v. Sheet Metal Workers Intern. Ass'n, Local No. 9,*10 F.3d 700, 705

(10th Cir. 1993).  The court additionally finds that plaintiff's claims under

the Fifth Amendment are defeated by *McKune v. Lile, supra.*

**Other pending motions**

> The record reflects several pending motions, including

defendants' motion to strike plaintiff's response to the answer (Dk.

87), plaintiff's motion for extension of time (Dk. 88), and defendants' motion

to stay discovery (Dk. 96).  In light of the court's resolution of the summary

judgment motion, these motions are denied as moot.

> IT IS THEREFORE ORDERED that defendants' motion for

summary judgment (Dk. 94) is granted.

> Dated this 31st day of October, 2007, Topeka, Kansas.

> s/ Sam A. Crow
> Sam A. Crow, U.S. District Senior Judge

30